J-S76016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.M., FATHER | : | No. 960 EDA 2017 |

Appeal from the Decree February 22, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at Nos: CP-51-AP-0000065-2017,
CP-51-DP-0001567-2014

BEFORE: PANELLA, J., STABILE, J., and PLATT,* J.

MEMORANDUM BY STABILE, J.:                 **FILED JANUARY 11, 2018**

M.M. ("Father") appeals from the decree entered February 22, 2017, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated his parental rights to his minor daughter, C.M.M. ("Child"), born in July 2003.[1] After careful review, we affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed a dependency petition with respect to Child on July 1, 2014. DHS averred that it filed the petition due to Child's truancy issues. DHS recommended that Child be adjudicated dependent, while remaining in the

---

* Retired Senior Judge assigned to the Superior Court.

[1] The trial court entered a separate decree that same day, terminating the parental rights of D.D. ("Mother"). Mother filed an appeal at Superior Court docket number 991 EDA 2017, which is assigned to a different panel of this Court.

home of Father and Mother. The trial court adjudicated Child dependent on September 3, 2014.

On January 9, 2015, DHS filed an application for order of protective custody. DHS averred that Father left Child in the care of her paternal grandmother while he checked himself into a drug rehabilitation program, and that the paternal grandmother was unable to care for Child. In addition, DHS averred that Mother was unable to care for Child due to her own drug issues and lack of suitable housing. The trial court entered an order of protective custody, directing that Child be temporarily committed to DHS. However, on January 12, 2015, the court entered a shelter care order withdrawing the order of protective custody and discharging Child's temporary commitment. The shelter care order indicated that Father absconded with Child, that her whereabouts were unknown, and that DHS should apply for an order of protective custody once Child is located. The dependency docket indicates that the court also terminated court supervision, ending Child's adjudication of dependency. DHS filed a second dependency petition on January 14, 2015.

On January 21, 2015, DHS filed an additional application for order of protective custody. DHS averred that Father and Mother contacted DHS and agreed to have Child placed in foster care. The court entered an order of protective custody that same day, followed by a shelter care order on January 23, 2015. DHS filed a third dependency petition on January 30, 2015. For reasons that are not entirely clear from the record, the court continued the case several times and deferred adjudication for nearly a year. The court

entered an order adjudicating Child dependent for a second time on November 19, 2015.

On January 18, 2017, DHS filed a petition to terminate Father's parental rights to Child involuntarily. The trial court conducted a termination hearing on December 22, 2017.[2] Following the hearing, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal on March 17, 2017, along with a concise statement of errors complained of on appeal.

Father now raises the following issue for our review.

> Whether [t]he trial court erred and/or abused its discretion by entering an order on February 22, 2017 involuntarily terminating the parental rights of Father where there was a bond between the father and the child that will be detrimental to the child to terminate?

Father's Brief at 5.[3]

_____

[2] The Honorable Vincent L. Johnson presided over Child's initial dependency proceedings. The Honorable Lyris F. Younge presided over the termination proceedings.

[3] In his notice of appeal, Father indicated that he also wished to challenge the February 22, 2017 permanency review order, changing Child's permanent placement goal to adoption. However, Father did not include a challenge to the goal change order in his concise statement, in his statement of questions involved, or in the argument section of his brief. Thus, we conclude that Father waived any challenge to the goal change order. *See* **Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted) ("We will not ordinarily consider any issue if it has not been set forth in or suggested by an appellate brief's statement of questions involved, and any issue not raised in a statement of matters complained of on appeal is deemed waived."); **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting **In re A.C.**, 991 A.2d 884, 897 (Pa.

We review Father's issue mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between

_____

Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
> >
> > ***
> >
> > (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
> >
> > ***

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1) (2), (5), (8), and (b).

On appeal, Father makes no effort to challenge the trial court's findings with respect to Section 2511(a). Thus, we need only consider whether the court abused its discretion by terminating his parental rights pursuant to Section 2511(b). The requisite analysis is as follows.

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

In this case, the trial court found that terminating Father's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 7/12/17, at 6-7. The court reasoned that Child is in a pre-adoptive foster home, and that Child wants to be adopted by her foster mother. *Id.*

Father argues that Child is bonded to him, and that ending this bond would be detrimental to Child. Father's Brief at 8-10. Father argues that he believed he was not allowed to visit with Child without the approval of Child's therapist, but that he maintained regular phone contact with Child, and that Child lived with him for many years before she entered foster care. *Id.* at 9-10.

Our review of the record supports the trial court's findings. During the termination hearing, DHS presented the testimony of Community Umbrella Agency ("CUA") case manager, Dominique Johnson. Ms. Johnson testified that Father's reunification objectives included participating in drug and alcohol

treatment, participating in services at the Achieving Reunification Center ("ARC"), obtaining housing, and visiting with Child. N.T., 2/22/17, at 42.

Concerning Father's compliance with these objectives, Ms. Johnson testified that Father has never completed, or participated in, drug and alcohol treatment. *Id.* CUA referred Father for parenting services at ARC, but Father failed to complete the services. *Id.* at 45. CUA also referred Father to ARC for assistance in finding employment. *Id.* While Father reports being employed, he has never provided documentation to support this claim. *Id.* Finally, Father remains without suitable housing. *Id.* at 44.

With respect to visitation, Ms. Johnson testified that Father has failed to visit with Child on a consistent basis since the trial court removed her from his home. *Id.* at 44. Father has not visited with Child at all since Ms. Johnson began working on this case in January 2016. *Id.* at 14, 43. Despite Father's failure to attend visits, Ms. Johnson testified that Father speaks with Child on the phone approximately "every two of three weeks[.]" *Id.* at 43, 48-49.

Concerning Child's current placement, Ms. Johnson testified that Child is "doing great" in her foster home. *Id.* at 23. Ms. Johnson explained that Child has "a genuine bond" with her foster mother. *Id.* at 24. "[Child] takes direction well from [her foster mother]. You know, she blends in with the family. [The foster mother] has two -- has other children in the home, and she treats her no differently than the children that are in the home." *Id.* Child's foster mother has stated that she is willing to adopt Child, and Child has stated that she wants to be adopted. *Id.* at 23, 25.

Ultimately, Ms. Johnson opined that terminating Father's parental rights would be in Child's best interest. *Id.* at 46. Ms. Johnson explained that Child is settled in a stable home where she has made "lifelong bonds[,]" and that Child's foster mother is open to allowing ongoing contact between Child and Father. *Id.* Ms. Johnson did not believe that Child would suffer irreparable harm. *Id.*

Thus, the record confirms that terminating Father's parental rights will best serve Child's needs and welfare. The trial court removed Child from Father's care in January 2015. Since that time, Father has done seemingly nothing to comply with his objectives and achieve reunification. This Court will not leave Child to languish in foster care while Father ignores his parental responsibilities. As we have stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Moreover, it is clear that whatever relationship Child maintains with Father should not prevent the termination of his parental rights. By the time of the termination hearing in February 2017, Child had not visited with Father

in over a year.[4]  Meanwhile, Child has been doing well in the care of her pre-adoptive foster mother.  The record demonstrates that Child wants to be adopted by her foster mother, and that terminating Father's parental rights will allow Child to enjoy the benefits of a permanent and stable home.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights.  Therefore, we affirm the court's February 22, 2017 decree.

Decree affirmed.

_____

[4] The record supports Father's argument that his lack of visits with Child may not have been entirely within his control.  The record contains permanency review orders entered in March and June 2016, providing Father with visits only at the discretion of Child and/or her therapist.  *See* Master's Recommendation – Permanency Review, 3/14/16 ("At the recommendation of child's therapist, mother and father to have supervised visits the agency [*sic*] –at the child's discretion."); Permanency Review Order, 6/6/16 (providing that Father is entitled to visits "[i]f Father avails himself . . . at the agency at the discretion of the child. . . . All visits, including sibling[,] to be at the discretion of the therapist.").  In addition, while Ms. Johnson seemed to testify that Child's therapist recommended visits with Father, her statements on this issue were less than clear.  *See* N.T., 2/22/2017, at 40 ("Only [Child] -- therapist at the time at Nueva Vida, with father, because he was the one that actually -- he asked me -- [Father].  But then it didn't work out for his work schedule, he stated.").  Nonetheless, even assuming for the sake of argument that Child and/or her therapist refused to allow visits with Father, this does not overcome Father's complete failure to address his reunification objectives, nor does it overcome Child's desire to be adopted by her foster mother.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/18